UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

|  |  |  |
|---|---|---|
| VICTORIA F., | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 3:24-CV-289-CHB |
| | ) | |
| v. | ) | |
| | ) | |
| FRANK BISIGNANO, *Commissioner of* | ) | **MEMORANDUM OPINION** |
| *Social Security*, | ) | **AND ORDER** |
| | ) | |
| Defendant. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Claimant Victoria F. appealed the decision of the Commissioner of Social Security not to award her disability benefits and filed an Opening Brief. [R. 15]. The Commissioner responded, [R. 19], and Claimant replied, [R. 20]. This matter is now before the Court on Magistrate Judge Regina S. Edwards's Report and Recommendation ("Recommendation"), which recommends that this Court affirm the final decision of the Commissioner. [R. 23]. Claimant timely filed objections to the Recommendation. [R. 24]. For the reasons that follow, the Court will adopt the Recommendation, overrule Claimant's objections, and affirm the final decision of the Commissioner.

## I.    BACKGROUND

On February 14, 2022, Claimant Victoria F. protectively filed an application for Supplemental Security Income ("SSI") benefits under Title XVI[1] of the Social Security Act, 42 U.S.C. § 1382c(a)(3) (the "Act"). [R. 12 (Administrative Record) (hereinafter "Administrative Transcript" or "Tr."), pp. 96, 108, 272–79].[2] She alleges disability beginning on May 1, 2008, due

---

[1] The Recommendation states that Claimant applied for benefits under Title II of the Act. *See* [R. 23, p. 1].

[2] The Court cites to the page numbers assigned by the Court's electronic docketing system.

to "heart failure, high blood pressure, respiratory problems, pancreatitis, gastro disease, chronic neck and back pain, anxiety, depression, post traumatic [sic] stress disorder, and [being] in a coma twice." *Id.* at 85, 97; *see also id.* at 308.

Claimant's application was denied initially and upon reconsideration. *Id.* at 85–96, 97–108. At Claimant's request, a hearing was held on April 17, 2023 before Administrative Law Judge William C. Zuber ("ALJ Zuber"). *See id.* at 61–82. ALJ Zuber issued an unfavorable decision on May 15, 2023. *Id.* at 109–22. Claimant appealed ALJ Zuber's decision to the Appeals Council, which remanded the case to ALJ Zuber for consideration of Claimant's alcohol use in determining disability. *Id.* at 128–34. ALJ Zuber held a second telephonic hearing on October 18, 2023. *See id.* at 44–60. ALJ Zuber then issued an unfavorable decision on February 27, 2024. *Id.* at 22–36. The Appeals Council declined review, and ALJ Zuber's decision became the final decision of the Commissioner. *See id.* at 10–13.

In making his determination, ALJ Zuber applied the traditional five-step sequential analysis promulgated by the Commissioner for evaluating a disability claim. 20 C.F.R. § 404.1520 (2025); *Kyle v. Comm'r of Soc. Sec.*, 609 F.3d 847, 855 (6th Cir. 2010). In summary, the evaluation process proceeds as follows:

1. Is the claimant involved in substantial gainful activity? If the answer is "yes," the claimant is not disabled. If the answer is "no," proceed to the next step.

2. Does the claimant have a medically determinable impairment or combination of impairments that satisfies the duration requirement and significantly limits his or her physical or mental ability to do basic work activities? If the answer is "no," the claimant is not disabled. If the answer is "yes," proceed to the next step.

3. Does the claimant have an impairment that meets or medically equals the criteria of a listed impairment within 20 C.F.R. Part 404, Subpart P, Appendix 1? If the answer is "yes," the claimant is disabled. If the answer is "no," proceed to the next step.

- 2 -

4. Does the claimant have the Residual Functional Capacity ("RFC") to return to his or her past relevant work? If the answer is "yes," then the claimant is not disabled. If the answer is "no," proceed to the next step.

5. Does the claimant's RFC, age, education, and work experience allow him or her to make an adjustment to other work? If the answer is "yes," the claimant is not disabled. If the answer is "no," the claimant is disabled.

*See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4) (2025).

The claimant bears the burden of proof with respect to steps one through four. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997). The burden shifts to the Commissioner at step five to prove that other work is available that the claimant is capable of performing. *Jordan v. Comm'r of Soc. Sec.*, 548 F.3d 417, 423 (6th Cir. 2008). The claimant always retains the burden of proving lack of RFC. *Id.*; *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 392 (6th Cir. 1999).

First, ALJ Zuber found that Claimant "has not engaged in substantial gainful activity since December 16, 2021, the [Claimant's] application date." [Tr., p. 27]. Second, he found Claimant has the severe impairments of "post-traumatic stress disorder, anxiety, depression, bipolar disorder, alcohol use disorder, and degenerative disc disease." *Id.* Third, ALJ Zuber found that none of Claimant's impairments or combination of impairments meet or medically equal the severity of a listed impairment under 20 C.F.R. § 404, Subpt. P, App'x 1. *Id.* at 28; *see also id.* at 28–30. ALJ Zuber then determined Claimant has the RFC to perform "light work" as defined in 20 C.F.R. § 416.967(b),

except the claimant is further limited to understand and remembering routine, simple instructions, and occasional interaction with the general public. She can tolerate occasional changes in the work routine and environment and can sustain concentration persistence and pace for 2 hour periods.

*Id.* at 30; *see also id.* at 30–35 (discussing RFC determination). Fourth, ALJ Zuber found Claimant "has no past relevant work." *Id.* at 35. Fifth and finally, considering Claimant's age, education,

work experience, and RFC, ALJ Zuber determined "there are jobs that exist in significant numbers in the national economy that the [C]laimant can perform." *Id.*

Based on this evaluation, ALJ Zuber concluded that Claimant was not disabled, as defined in the Social Security Act, at any point since the alleged onset date through the date of the ALJ's decision. *Id.* at 36. Claimant sought administrative review of the decision, and the Appeals Council declined review on June 17, 2024. *Id.* at 10–13. At that point, ALJ Zuber's decision became the final decision of the Commissioner, and Claimant sought judicial review from this Court on May 13, 2024. [R. 1].

## II.    LEGAL STANDARD

When a party timely objects, the Court reviews *de novo* only those portions of a Report and Recommendation to which an objection is made. 28 U.S.C. § 636(b)(1)(C). The Court may adopt without review any portion of the report to which no objection is made. *See Thomas v. Arn*, 474 U.S. 140, 150 (1985). On review, the Court "may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b)(3). Accordingly, the Court will review *de novo* the portions of Magistrate Judge Edwards's Recommendation to which Claimant properly objects.

Judicial review of the Commissioner's decision is restricted to determining whether it is supported by substantial evidence and was made pursuant to proper legal standards. *Colvin v. Barnhart*, 475 F.3d 727, 729–30 (6th Cir. 2007). "Substantial evidence" is defined as "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). Courts are not to conduct a *de novo* review, resolve conflicts in the evidence, or make credibility determinations. *Id.* Rather, the Court must "affirm the

Commissioner's conclusions unless the Commissioner failed to apply the correct legal standard or made findings of fact that are unsupported by substantial evidence." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006).

## III.    ANALYSIS

Claimant argues that ALJ Zuber failed to properly evaluate the medical evidence offered by Dr. Sarah Kerrick, a consultative psychological examiner, and Dr. Antonio Lopez, a consultative physical examiner. [R. 24, pp. 2–4]; *see also* [R. 15, pp. 10–16]. Claimant contends these errors were not harmless because they impacted the ALJ's findings on her RFC, and thus, the decision warrants remand. [R. 24, pp. 2–5]; *see also* [R. 15, pp. 10–16].

### A.    Dr. Sarah Kerrick

The Court first turns to Claimant's objection about ALJ Zuber's consideration of the medical opinion evidence of Dr. Sarah Kerrick concerning Claimant's mental abilities. [R. 24, pp. 2–3]; [R. 15, pp. 10–13]. Specifically, Claimant argues that, contrary to Judge Edwards's conclusion in the Recommendation, ALJ Zuber erred by finding that Dr. Kerrick's opinion was unpersuasive. [R. 24, p. 3]. Claimant ultimately argues that ALJ Zuber "was looking for any reason to get around the Agency's own mental health expert's report[] and find [Claimant] less restricted in her ability to function." *Id.*

First, concerning the proper standard for evaluating Dr. Kerrick's opinion, the new regulations for evaluating medical opinions are applicable here since Claimant's claim was filed after March 27, 2017. *See* 20 C.F.R. § 404.1520c. The previous regulations required that a treating physician's opinion be given controlling weight if it was well supported by medically acceptable clinical and laboratory diagnostic techniques and was not inconsistent with the other substantial evidence in the case record. § 404.1527(c)(2). Under the new regulations, however, the agency

"will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's own] medical sources." § 404.1520c(a).

An administrative law judge must consider supportability, consistency, relationship with the claimant, specialization, and other factors when determining the persuasiveness of an opinion. § 404.1520c(c)(1)–(5). But the administrative law judge need only explain how she considered the supportability and consistency factors, which are the two most important in determining the persuasiveness of a medical source's opinion or a prior administrative medical finding. § 404.1520c(b)(2). The more relevant the objective medical evidence and supporting explanations presented, the more persuasive the medical opinion(s) will be. § 404.1520c(c)(1). The more consistent the medical opinion(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive it will be. § 404.1520c(c)(2). "To further illuminate this distinction, supportability relates to the objective medical evidence and supporting explanation provided by a medical source to bolster their own opinion; by contrast, consistency relates to the relationship of a medical source's opinion to other medical opinions and evidence of record." *Marika G. v. O'Malley (Marika I)*, No. 3:24-CV-00105-CRS-RSE, 2024 WL 5465207, at *4 (W.D. Ky. Dec. 20, 2024), *report and recommendation adopted sub nom.*, *Marika G. v. King (Marika II)*, No. 3:24-CV-105-CRS, 2025 WL 384416 (W.D. Ky. Feb. 4, 2025) (citing 20 C.F.R. § 416.920c(c)(1)–(2)); *see also* [R. 23, p. 9]. "[T]he measuring stick for an 'adequate discussion' [of these factors] is whether the ALJ's persuasiveness explanation enables the court to undertake a meaningful review of his finding as to whether the particular medical opinion was supported by substantial evidence." *Terhune v. Kijakazi*, No. 3:21-37-KKC, 2022 WL 2910002, at *3 (E.D. Ky. July 22, 2022) (citations omitted).

"A reviewing court evaluates whether the ALJ properly considered the factors as set forth in the regulations to determine the persuasiveness of a medical opinion." *Wroblesky v. Comm'r of Soc. Sec.*, No. 1:23-cv-232-JEG, 2023 WL 7131807, at *9 (N.D. Ohio Oct. 30, 2023) (quoting *Toennies v. Comm'r of Soc. Sec.*, No. 1:19-CV-02261-JDG, 2020 WL 2841379, at *14 (N.D. Ohio June 1, 2020)). This means that the ALJ must "articulate the supportability and consistency of each medical opinion." *Newman v. Kijakazi*, No. 5:22-59-KKC, 2023 WL 2700700, at *2 (E.D. Ky. Mar. 29, 2023) (citations omitted). But he or she "is not required to specifically use the terms supportability or consistency in [the] analysis." *Id.* (internal quotation marks omitted) (quoting *Childers v. Kijakazi*, Civil No. 5:21-285-JMH, 2022 WL 2706150, at *5 (E.D. Ky. July 12, 2022)); *see also Fisk v. O'Malley*, No. 5:23-CV-00261-MAS, 2024 WL 4194307, at *4 (E.D. Ky. Sep. 13, 2024) ("The ALJ describes his consistency findings but does not necessarily use those words. Such specificity or magical incantation of words is not required."). Even so, the ALJ must "provide a coherent explanation of [her] reasoning." *Hardy v. Comm'r of Soc. Sec.*, 554 F. Supp. 3d 900, 906 (E.D. Mich. 2021) (quoting *Lester v. Saul*, No. 20-01364, 2020 WL 8093313, at *14 (N.D. Ohio Dec. 11, 2020), *report and recommendation adopted sub nom.*, *Lester v. Comm'r of Soc. Sec.*, No. 20-1364, 2021 WL 119287 (N.D. Ohio Jan. 13, 2021)).

In Dr. Kerrick's 2022 "Mental Status Evaluation Report," she found that Claimant had marked limitations in (1) "[h]er ability to carry out simple instructions; carry out detailed instructions; and perform at a consistent/reasonable pace without interruption from psychological symptoms"; (2) "[h]er ability to interact with the public, supervisors, and co-workers; and accept criticism from supervisors"; and (3) "[h]er ability to respond to changes/stress/pressures in a work environment." [Tr., pp. 930–31]. Additionally, Dr. Kerrick found that Claimant had no limitations with her "capacity to understand, remember, and carry out instructions towards performance of

simple repetitive tasks," and a moderate limitation in "[h]er ability to understand and remember detailed instructions." *Id.* at 930. Dr. Kerrick's assessment noted that Claimant could manage her benefits, and with mental health treatment, "[t]he prognosis for the [C]laimant's improvement is guarded." *Id.* at 931. Without treatment, Dr. Kerrick opined that Claimant's "prognosis would likely be poor." *Id.*

In considering Dr. Kerrick's opinion, ALJ Zuber correctly summarized her findings and determined they were not persuasive in light of other treatment records and her own exam findings. Specifically, the ALJ provided the following:

> Sarah Kerrick, PsyD, performed a psychological examination of the claimant. Dr. Kerrick opined that the claimant could perform simple tasks, but would have marked limitations interacting with others in the workplace, maintain pace, or handle work stress (Exhibit 15F). Dr. Kerrick relied on the claimant's subjective complaints and her report that she was in sustained remission and sober from abusing substances. The longitudinal medical record does not support these findings. While the record does note findings of depressed or anxious mood as well as situational stressors, the claimant was also found to exhibit linear thought process, cooperative attitude, unremarkable thought content, no hallucinations or delusions, no attention or concentration deficits, no memory issues, average intelligence, and good insight/judgment. (Exhibit 11F/16; 17F/149, 157, 183, 200; 22F/107; 27F/13). These findings are not consistent with marked limitations. Dr. Kerrick did not have the opportunity to review the full medical record or the claimant's hearing testimony. For these reasons, the undersigned finds that the opinions of Dr. Kerrick are not persuasive.

*Id.* at 34.

The Court finds that the ALJ sufficiently articulated the supportability and consistency of Dr. Kerrick's opinion. While the ALJ did not use the word "supportability," he adequately articulated why Dr. Kerrick's opinions were not supported by her own exam findings. *Id.* He further noted that Dr. Kerrick's opinions were heavily reliant on Claimant's subjective complaints and that Dr. Kerrick did not have the opportunity "to review the full medical record or the claimant's hearing testimony." *Id.* As a preliminary matter, Claimant takes issue with the fact that

ALJ Zuber discounted Dr. Kerrick's medical opinion because she only examined Claimant once, and she relied on Claimant's subjective complaints in forming her opinion without reviewing Claimant's entire medical record. *See* [R. 24, pp. 2–3]; *see also* [R. 15, pp. 10–13]; [Tr., pp. 928–29 (Claimant's self-reporting to Dr. Kerrick)]. Claimant acknowledges that the ALJ's consideration that Dr. Kerrick relied on Claimant's subjective complaints in discrediting Dr. Kerrick's opinions is a "valid consideration," but Claimant argues that the "mere fact that [Dr. Kerrick] was able to interview [Claimant] and hear her subjective complaints should not diminish the credibility of Dr. Kerrick's opined limitations." [R. 24, p. 3]. Claimant continues, "Dr. Kerrick's opinions were based on her own assessment of [Claimant] in combination with [Claimant's] remarks and historical review." *Id.*

First, the ALJ did not err in considering these factors, because he was permitted to do so when evaluating Dr. Kerrick's medical opinion. *See Hopkins v. Comm'r of Soc. Sec.*, No. 23-5696, 2024 WL 3688302, at *3 (6th Cir. Apr. 9, 2024) (upholding district court's finding that ALJ did not err by considering the provider's heavy reliance on the claimant's subjective complaints when medical opinion conflicted with provider's own exam findings); *Sallaz v. Comm'r of Soc. Sec.*, No. 23-3825, 2024 WL 2955645, at *6 (6th Cir. June 12, 2024); *Kepke v. Comm'r of Soc. Sec.*, 636 F. App'x 625, 629 (6th Cir. 2016).

Next, turning to the ALJ's evaluation of Dr. Kerrick's medical opinion, ALJ Zuber explained that Dr. Kerrick's opinion provided that Claimant "could perform simple tasks, but would have marked limitations interacting with others in the workplace, maintain[ing] pace, or handl[ing] work stress." [Tr., p. 34]. But earlier in his decision, ALJ Zuber contrasted these stark limitations with Dr. Kerrick's own exam findings which were unremarkable in many respects:

> During a May 2022 consultative evaluation, the claimant had good immediate recall and fair delayed recall. She was able to recall directions without difficulty. She also

recalled 2/3 words following a five-minute delay. The claimant was able to recall 5 digits forward and 3 digits backward and gave correct responses to 2/3 simple math computations. The claimant exhibited normal speech, normal thought content, and was oriented to person, place, date, and purpose. She was able to respond to the examiner in a timely manner and evidenced no problems with simple attention or sustained focus. (Exhibit 15F).

*Id.* at 32; *see also Tyrian C. v. Kijakazi*, No. 3:21-CV-00568-RGJ, 2023 WL 310179, at *6 (W.D. Ky. Jan. 3, 2023), *report and recommendation adopted*, 2023 WL 258357 (W.D. Ky. Jan. 18, 2023) (citation omitted) (discussing how the ALJ's evaluation of the opinion evidence elsewhere in the RFC determination is sufficient). Ultimately, ALJ Zuber articulated how Dr. Kerrick's opinion was not supported by the exam findings, or by other parts of her opinion. [Tr., p. 34]. As ALJ Zuber noted, Dr. Kerrick's exam records described how Claimant "exhibited normal speech, normal thought content, and was oriented to person, place, date, and purpose." [Tr., p. 32]; *see also* [Tr., pp. 929–30]. ALJ Zuber further stated that Claimant "was able to recall directions without difficulty" and "evidenced no problems with simple attention or sustained focus." [Tr., p. 32]; *see also* [Tr., pp. 929–30]. Dr. Kerrick's opinion, however, described many of Claimant's limitations to perform activities using these skills as "marked" in her ultimate assessment. *Id.* at 34, 930–31.

Earlier in his decision, ALJ Zuber also acknowledged the discrepancy in Claimant's reporting of her subjective complaints with Dr. Kerrick's exam findings. [Tr., p. 29]. ALJ Zuber noted that Claimant reported memory problems, but Dr. Kerrick's exam showed good recent and remote memory, including the ability to recall recent events and name three former United States presidents. *Id.* As the Magistrate Judge summarized, by comparing Dr. Kerrick's normal exam findings with her recommendations for multiple marked limitations, ALJ Zuber indicated that "Dr. Kerrick's opinion was undermined by the contrast between her own relatively normal clinical findings and the severity of symptoms reported by Claimant." [R. 23, p. 11]; [Tr., pp. 928–29].

This Court agrees with the Magistrate Judge that "[b]y referencing Dr. Kerrick's limited review of the record and Dr. Kerrick's reliance on Claimant's subjective complaints without accounting for her own objective examination findings, ALJ Zuber reasonably determined that the opinion lacked the support and explanation required under the supportability factor." [R. 23, p. 11 (citing 20 C.F.R. § 404.1520c(c)(1))]; *see also Peters v. O'Malley*, No. 6:24-CV-11-REW, 2024 WL 5077599, at \*4–5 (E.D. Ky. Dec. 10, 2024) (explaining that the medical provider's "opinions suffer[ed] from internal inconsistencies," which was "a valid reason for finding the opinion unsupported," as "[t]hese internal contradictions between assessment and opinion plausibly go to the heart of supportability"). This was sufficient for ALJ Zuber to explain how he considered the supportability of Dr. Kerrick's opinion. *See Wroblesky*, 2023 WL 7131807, at \*10 (determining that the ALJ had discussed the supportability of a provider's opinion by "reviewing [the provider's] own findings," which showed "little support . . . for the opined limitations" and was therefore inconsistent with the provider's ultimate opinion on the claimant's limitations).

In addition to the internal inconsistencies between Dr. Kerrick's opinion and her exam findings, throughout his decision, ALJ Zuber also cited treatment records and exam findings that reflect that Dr. Kerrick's opinion was inconsistent with and unsupported by the other medical evidence. *See* [Tr., p. 34]. Judge Edwards thoroughly detailed how ALJ Zuber considered the medical evidence, observing that he "cite[d] to several sources in the record to support his observations." [R. 23, p. 12].

> For example, ALJ Zuber cited to Exhibit 11F/16, which notes "memory problem: none," "attention/concentration: no deficits," and estimates Claimant's intellectual functioning as average. (Tr., p. 905). Additionally, ALJ Zuber cited to Exhibit 17F/149, which reflects that Claimant's "thought process is linear and logical," "attention is grossly intact," and "general intelligence appears average," with no signs of hallucinations, paranoia, or panic. (Tr., p. 1084). ALJ Zuber also cited to Exhibit 17F/157, which acknowledged "depression and anxiety from previous trauma," but noted that the surrounding records reflected stable mental functioning.

> For instance, another source ALJ Zuber cited, Exhibit 17F/183, describes Claimant as "alert, pleasant, cooperative, engaged," with coherent speech, linear and logical thought process, grossly intact memory and attention, average intelligence, and no hallucinations or paranoia. (Tr., p. 1118). These same findings appear again in another source ALJ Zuber cited, Exhibit 17F/200, which notes Claimant remained oriented, with coherent speech, intact memory and attention, and normal thought content. (Tr., p. 1135). Similarly, ALJ Zuber cited to Exhibit 22F/107 and Exhibit 27F/13, which both state that Claimant was "alert and oriented to person, place, and time." (Tr., pp. 1350, 1718).

*Id.* at 12 n.7; *see also* [Tr., p. 34]. As Judge Edwards noted, *see* [R. 23, p. 12], ALJ Zuber acknowledged Claimant's mental health issues, namely depression, anxiety, and situational stressors, but also explained that the record consistently exemplified no issues with memory, attention, or concentration, and had situational awareness and linear thought. [Tr., p. 34]; *see also id.* at 32. ALJ Zuber concluded that these consistently unremarkable findings across multiple sources did not support any "marked limitations," as Dr. Kerrick recommended. *Id.* at 34; *see also Masterson v. Comm'r of Soc. Sec.*, No. 24-5512, 2025 WL 317501, at *1 (6th Cir. Jan. 28, 2025) ("Given all these contradictions, a reasonable mind could find the opinions from [the medical providers] unpersuasive, which means that substantial evidence exists to support the ALJ's decision to reject their opinions." (internal quotation marks and citations omitted)); *Smith v. O'Malley*, No. 5:23-CV-00063-MAS, 2024 WL 1259445, at *6 (E.D. Ky. Mar. 25, 2024) (explaining that, even if "the other treatment notes reflecting [the claimant's] mood or other symptoms may have been consistent with parts of [the provider's] report, the ALJ was free to find that there was treatment that was inconsistent as well and discount the persuasiveness of [the provider's] opinion accordingly. For the Court to find otherwise would require the Court to impermissibly reweigh the evidence."). Here, for the reasons outlined above, the Court finds that the ALJ sufficiently articulated the factors of supportability and consistency when evaluating Dr. Kerrick's medical opinion.

The Court's review of the record and consideration of ALJ Zuber's findings regarding Dr. Kerrick's opinion, demonstrate Claimant's mental RFC is supported by substantial evidence.[3] The medical evidence does show that Claimant was working with a mental health provider and suffers from anxiety and depression. *See id.* at 1084–147. However, the record also shows that Claimant consistently exhibited "stable mental functioning," *see* [R. 23, p. 13]; exhibited normal behaviors, *see, e.g.*, [Tr., pp. 701–02, 910, 956–57, 971–72, 979, 1090, 1124, 1141]; reported symptom improvement with journaling and medication changes, *see id.* at 1137 ("[Claimant] indicated medication changes from last visit were helpful."); *id.* at 1098, 1191 (reporting on Claimant's use of journaling "as a coping skill"); and had no mental health treatment since October 2022, *Id.* at 1189–91; *see also id.* at 33 ("The record is devoid of mental health treatment following October 2022."). Claimant also testified that she had not established care with a new mental health provider and was not taking any mental health medication at the time of her hearing. *Id.* at 51–52. Claimant has not pointed to any evidence showing that ALJ Zuber's RFC determination was unsupported by substantial evidence, which is her burden to prove. *Jordan*, 548 F.3d at 423; *Her*, 203 F.3d at 392. Thus, ALJ Zuber complied with the regulations by discussing both the supportability and consistency of the assessment, and his discussion of Claimant's RFC was supported by substantial evidence.

Even if the Court were to find that ALJ Zuber did not adequately explain the supportability or consistency of Dr. Kerrick's opinion, the Court would consider any error in ALJ Zuber's evaluation of Dr. Kerrick's opinion to be harmless. "An ALJ's failure to properly apply the regulations may be considered harmless where the goal of the regulation was otherwise met."

---

[3] Claimant does not clearly object to the Magistrate Judge's finding that the ALJ did not err in fashioning Claimant's RFC. Even so, the Court will briefly address why ALJ Zuber's RFC determination for both her mental and physical limitations (corresponding to the relevant examiner) is supported by substantial evidence.

*Marika I*, 2024 WL 5465207, at *7 (citation and internal quotation marks omitted); *see Thaxton v. Comm'r of Soc. Sec.*, 815 F. App'x 955, 960 (6th Cir. 2020) (first citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004); then citing *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009)) (outlining the ways in which a court can find "harmless error"); *see also LaFollette v. Kijakazi*, No. 3:22-CV-32-REW, 2023 WL 7167177, at *7 (E.D. Ky. Sep. 18, 2023) ("[T]he ALJ's failure to follow the Agency's procedural rule[s] does not qualify as harmless error where [the Court] cannot engage in meaningful review of the ALJs decision." (alterations in original) (internal quotation marks omitted) (quoting *Blakley*, 581 F.3d at 409)). In other words, "the Court must decide whether ALJ [Zuber's] explanation is sufficient to permit meaningful judicial review and enable the Claimant to understand why" the ALJ found Dr. Kerrick's opinion to be unpersuasive. *Marika I*, 2024 WL 5465207, at *7; [Tr., p. 34].

Here, the ALJ's explanation is sufficient. As explained above, ALJ Zuber detailed how Claimant's consistently unremarkable linear thought and "intact memory and attention"—and the other medical evidence in the record—failed to support marked limitations. [Tr., p. 34]; *see also id.* at 701–02, 910, 956–57, 971–72, 979, 1090, 1124, 1141. ALJ Zuber's RFC explanation as a whole permitted this Court to engage in meaningful judicial review, thereby meeting the goal of the regulation to articulate the supportability and consistency of Dr. Kerrick's opinion. *Compare Marika I*, 2024 WL 5465207, at *7 (finding that error was harmless because, although the ALJ "did not cite to any specific treatments" in the discussion of a provider's opinion, the ALJ "referenc[ed]" the treatment (with citations) in the "summary of the record," which "permit[ted] meaningful judicial review and allow[ed] Claimant to understand why" the ALJ determined that the provider's "opinion was not consistent with the other evidence of record"), *with LaFollette*, 2023 WL 7167177, at *7 (determining that the error was not harmless because the court could not

- 14 -

"discern the ALJ's explanation for deviating from the state agency consultants' findings based on the record, and consequently, the [c]ourt [could][]not meaningfully review his decision"), *and Terhune*, 2022 WL 2910002, at *5 (explaining that error was not harmless when "the ALJ stated in conclusory fashion that *all* objective medical findings in the record do not support the [providers'] opinions," "without any explanation or citation to specific portions of the record" (emphasis in original)).

Ultimately, ALJ Zuber sufficiently addressed the supportability and consistency of Dr. Kerrick's opinion, and his decision is supported by substantial evidence.

### B.    Dr. Antonio Lopez

Claimant also challenges ALJ Zuber's evaluation of Dr. Antonio Lopez's medical opinion concerning her physical limitations. [R. 24, p. 4]; *see also* [R. 15, pp. 13–16]. Claimant contends that, because ALJ Zuber did not evaluate Dr. Lopez's opinion as medical opinion evidence, he "could not have properly evaluated or considered the impact of Dr. Lopez's opined restrictions." [R. 24, p. 4].

In Dr. Lopez's August 2022 exam, he included a medical source statement and determined that,

> [b]ased on the exam, patient should be able to stand for 20 minutes. Patient should be able to walk for 10 minutes on flat surface. Patient was able to get on and off the table without assistance or visible discomfort. No assistive device should be necessary. Patient should be able to lift and carry objects weighing approximately 5 pounds for 5 feet without difficulty. Patient should be capable of handling objects in both hands with good fine motor coordination. Patient is able to fasten buttons and use zippers. Range of motion of upper and lower extremities is normal, except as listed in attached sheet. Patient can hear and speak without difficulties. Patient demonstrates good judgment and coordination in avoiding hazards in the workplace and home. Patient seems to have normal ability to reason and make occupational, personal, and social adjustments. Patient should be able to travel independently.

*Id.* at 936.

ALJ Zuber correctly summarized the findings from Dr. Lopez's medical source statement and determined they were not persuasive in light of other treatment records and his own exam findings. ALJ Zuber evaluated Dr. Lopez's opinion as follows:

> A. Lopez, MD, performed a consultative physical examination of the claimant (Exhibit 16F). Dr. Lopez opined that the claimant should at least be able to perform a range of sedentary work based on her subjective complaints at the examination. Dr. Lopez does not express an opinion of the most the claimant could physically do in a work setting. Dr. Lopez's findings on examination were essentially normal and do not support limiting the claimant because of obesity or her reported back pain. In addition to this internal inconsistency, Dr. Lopez's opinions are inconsistent with the longitudinal medical record showing findings of normal range of motion, intact motor function, intact sensation, normal and symmetric reflexes. (Exhibit 21F/28; 22F/107; 26F/12; 27f/13, 107). For these reasons, Dr. Lopez's opinions are not persuasive.

*Id.* at 34.

Again, before turning to ALJ Zuber's evaluation of Dr. Lopez's opinion, Claimant asserts that ALJ Zuber did not consider Dr. Lopez's opinion to be a medical opinion, and that he discounted Dr. Lopez's opinion to the extent it relied on Claimant's subjective complaints. [R. 24, p. 4]; *see also* [R. 15, pp. 13–16]. There is no indication from his decision that ALJ Zuber did not consider Dr. Lopez's opinion as part of his evaluation of the medical opinion evidence. Rather, as Judge Edwards explained, it appears that ALJ Zuber observed, as part of his evaluation of Dr. Lopez's opinion, that Dr. Lopez did not explain what he believed to be Claimant's RFC, which details the *most* a claimant can do. [R. 23, p. 17 (citing 20 C.F.R. § 404.1545(a)(1)) ("Your residual functioning capacity is the most you can still do despite your limitations.")]. ALJ Zuber clearly considered Dr. Lopez's opinions, [Tr., p. 34], and the Court is readily able to evaluate ALJ Zuber's decision—in particular his consideration of Dr. Lopez's opinions—and determine it is supported by substantial evidence. And as addressed above, the ALJ did not err in considering the extent to which Dr. Lopez relied on Claimant's subjective complaints. *See Hopkins*, 2024 WL 3688302, at

*3 (upholding the district court's finding that the ALJ did not err by considering the provider's heavy reliance on the claimant's subjective complaints when medical opinion conflicted with provider's own exam findings); *Sallaz*, 2024 WL 2955645, at *6; *Kepke*, 636 F. App'x at 629.

Again, in analyzing the supportability of Dr. Lopez's opinion, ALJ Zuber explained that Dr. Lopez concluded that Claimant "should *at least* be able to perform a range of sedentary work based on her subjective complaints at the examination." [Tr., p. 34 (emphasis added)], although he did "not express an opinion of *the most* the claimant could physically do in a work setting." *Id.* (emphasis added). Notably, and similarly to ALJ Zuber's evaluation of Dr. Kerrick's opinion, ALJ Zuber explained that "Dr. Lopez's findings on examination were essentially normal":

> The claimant complained of joint pain during an August 2022 consultative examination. (Exhibit 16F). However, she exhibited 5/5 strength, normal gait, normal range of motion, 2+ deep tendon reflexes, and ability to sit and stand without difficulty. (Exhibit 16F).

*Id.* at 32, 34; *see Tyrian C.*, 2023 WL 310179, at *6 (discussing how the ALJ's evaluation of the opinion evidence elsewhere in the RFC determination is sufficient). ALJ Zuber articulated why Dr. Lopez's opinion was not persuasive, namely that his exam findings were "essentially normal" and, as a result, did "not support" any further limitations for Claimant. [Tr., p. 34]; *see id.* at 935, 938–40 (showing normal physical exam findings and all range of motion measurements within normal range). In particular, ALJ Zuber noted how during Dr. Lopez's examination, Claimant had no difficulty standing and sitting, and she had "normal gait, normal range of motion, [and] 2+ deep tendon reflexes," with full grip strength. [Tr., pp. 32, 34]; *id.* at 935; *see also Adams v. Comm'r of Soc. Sec.*, No. 23-3284, 2023 WL 6366106, at *3 (6th Cir. Sep. 28, 2023) (finding the claimant's "largely unremarkable physical examinations, in which she consistently displayed normal strength, reflexes, and gait" to lend support to ALJ's decision not to find the claimant disabled). ALJ Zuber clearly considered the disconnect between Dr. Lopez's exam findings and his medical opinion,

and based on the ALJ's evaluation of this evidence, did not find Dr. Lopez's opinion to be persuasive. *See Wroblesky*, 2023 WL 7131807, at *10 (determining that the ALJ had discussed the supportability of a provider's opinion by "reviewing [the provider's] findings," which showed "little support . . . for the opined limitations" and was therefore inconsistent with the provider's ultimate opinion on the claimant's limitations).

ALJ Zuber also adequately considered the consistency of Dr. Lopez's opinion. *See* [Tr., p. 34]. In particular, ALJ Zuber highlighted how "Dr. Lopez's opinions are inconsistent with the longitudinal medical record showing findings of normal range of motion, intact motor function, intact sensation, normal and symmetric reflexes." *Id.* (citing *id.* at 1219, 1356, 1535,[4] 1724, 1818). Further, Judge Edwards explained how "ALJ Zuber cited to record evidence that Claimant had normal musculoskeletal function, including no swelling or tenderness, normal range of motion, and intact motor function," and other "record evidence[,] which documented no tenderness, normal range of motion, and normal and symmetric reflexes," as well as "evidence which reported equal motor strength and sensation in the upper extremities." [R. 23, p. 16 (internal quotation marks omitted) (citing [Tr., p. 34])]. It is clear that ALJ Zuber thoroughly considered the medical evidence when determining that Dr. Lopez's opinion was not persuasive. [Tr., p. 34]; *see also Masterson*, 2025 WL 317501, at *1 ("Given all these contradictions, a reasonable mind could find the opinions from [the medical providers] unpersuasive, which means that substantial evidence exists to support the ALJ's decision to reject their opinions." (internal quotation marks and citations omitted)); *Smith*, 2024 WL 1259445, at *6 (explaining that, even if "the other treatment notes reflecting [the claimant's] mood or other symptoms may have been consistent with parts of [the provider's] report, the ALJ was free to find that there was treatment that was inconsistent as

---

[4] ALJ Zuber cited to page 1552, but page 1535 appears to be the correct page he is referencing.

well and discount the persuasiveness of [the provider's] opinion accordingly. For the Court to find otherwise would require the Court to impermissibly reweigh the evidence."). For the reasons explained, the Court finds that the ALJ sufficiently articulated the factors of supportability and consistency when evaluating Dr. Lopez's medical opinion.

Based on ALJ Zuber's evaluation, and upon independent review of the record as a whole, the Court finds that substantial evidence supports ALJ Zuber's assessment of the medical evidence concerning Claimant's physical limitations. Throughout Claimant's medical history, as ALJ Zuber pointed out, "she continued to exhibit normal strength and tone, normal gait and otherwise intact sensation." [Tr., p. 32]; *see also id.* at 563, 680, 688, 705 (describing "musculoskeletal" "strength" as "normal"); *id.* at 479, 522–23, 627, 935, 1124, 1535 (describing normal gait). Certain records demonstrate that Claimant was positive for both neck and back pain. *See id.* at 935 (displaying positive sign for "joint aches" and "pain"); *id.* at 1219 ("Positive for back pain, myalgias, neck pain and neck stiffness."); *id.* at 1733 (describing neck and back pain as positive); *id.* at 1817 ("Positive for back pain and neck pain. Negative for arthralgias and myalgia."); *id.* at 1955 (displaying back pain as positive). However, many records show that Claimant either tested negative for joint pain or denied it outright. *See id.* at 623 ("[N]egative for . . . back pain."); *id.* at 1090, 1103 ("Denies musculoskeletal pain, muscle weakness or motor dysfunction."); *id.* at 1155, 1276 ("Negative for neck pain."); *id.* at 1353 (Claimant denying neck pain); *id.* at 1355 (showing back pain and neck pain as "[n]egative"). ALJ Zuber observed that Claimant did experience "decreased sensation" and "tenderness" in her joints on some occasions, *id.* at 32, as is clear from the record evidence, *see, e.g.*, *id.* at 935 (describing neck as "tender[]"); *id.* at 1277 ("Tenderness present."). However, the medical evidence also shows that, overall, Claimant retained normal range of motion and utilized conservative treatment methods, such as pain relievers, physical

therapy, and steroid injections. *Id.* at 934–40, 1216–20, 1233–34, 1535–36; *see id.* at 49 (Claimant testifying that she declined option for surgery in favor of continued injections); *see also Marika II*, 2025 WL 384416, at *5 (quoting *Adams*, 2023 WL 6366106, at *3 ("characterizing epidural injections, medial-branch blocks, and prescription pain medication as conservative treatment" (internal quotation marks omitted)); *Roland v. Kijakazi*, No. 5:20-CV-113-JMH, 2021 WL 3713558, at *5 (E.D. Ky. Aug. 20, 2021) (stating that an ALJ can consider the effectiveness of a spinal cord stimulator and other treatments, such as medication, physical therapy, and injections, when evaluating Claimant's symptoms for RFC).

In weighing this medical evidence, ALJ Zuber thoroughly explained why he imposed the RFC that he did. *Id.* at 30–35. Again, it is her burden to prove that the ALJ's decision was not supported by substantial evidence, and Claimant has not done so here. *Jordan*, 548 F.3d at 423; *Her*, 203 F.3d at 392. Accordingly, the Court finds that there is substantial evidence in the record to support the ALJ's determination about Claimant's RFC.

The Court would consider any error in ALJ Zuber's evaluation of the supportability and consistency of Dr. Lopez's opinion to be harmless. Again, "[a]n ALJ's failure to properly apply the regulations may be considered harmless where the goal of the regulation was otherwise met." *Marika I*, 2024 WL 5465207, at *7 (citation and internal quotation marks omitted); *see Thaxton*, 815 F. App'x at 960 (citations omitted). Here, ALJ Zuber explained why a more restrictive RFC was not warranted based on the medical evidence and met the goal of the regulation by discussing the supportability and consistency of Dr. Lopez's opinion. [Tr., p. 34]. Thus, ALJ Zuber sufficiently addressed the supportability and consistency of Dr. Lopez's opinion, and his decision is supported by substantial evidence.

As a closing note, an ALJ's decision may be supported by substantial evidence "even if

that evidence could support a decision the other way." *Casey v. Sec'y of Health & Hum. Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993). While there might be evidence in the record that could support a contrary conclusion, it is clear ALJ Zuber adequately considered all evidence of record, and the Court finds no error in his decision. *See Peters*, 2024 WL 5077599, at *3 ("The Court's take on the merits has no bearing—it must affirm the agency decision, if supported by substantial evidence, even if it may have decided the case differently if standing in the ALJ's shoes." (citing *Johnson v. Comm'r of Soc. Sec.*, 652 F.3d 646, 648 (6th Cir. 2011))).

## IV.    CONCLUSION

For all these reasons, the Court will affirm the decision of the Commissioner. Accordingly,

**IT IS HEREBY ORDERED** as follows:

1.    Magistrate Judge Regina S. Edwards's Report and Recommendation, [**R. 23**], is **ADOPTED** as the opinion of this Court. Claimant's objections, [**R. 24**], are **OVERRULED**.

2.    The final decision of the Commissioner is **AFFIRMED**.

3.    A separate Judgment will be entered consistent with this Order.

This the 10th day of September, 2025.

CLARIA HORN BOOM,
UNITED STATES DISTRICT COURT JUDGE
EASTERN AND WESTERN DISTRICTS OF
KENTUCKY